ANNIE T. SULLIVAN, Appellant, *v.* THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

Second Department, January 18, 1918.

**Schools — city of New York — salary of teachers — judgment — res adjudicata.**

A schedule adopted by the board of education of the city of New York, under the Davis Act (Laws of 1900, chap. 751, § 4), giving to a critic teacher the same salary as a model teacher, although the critic teacher was a regular teacher within the meaning of the statute, is invalid, and such teacher may recover for loss of salary incurred by being so classified.

But such teacher in a subsequent action cannot relitigate her rights for the period covered by the first action.

Such a critic teacher is an assistant teacher within the meaning of chapter 902 of the Laws of 1911, and is entitled to salary according to the general schedule for assistant teachers in force when said act took effect.

APPEAL by the plaintiff, Annie T. Sullivan, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 5th day of February, 1917, dismissing the complaint on the merits upon the decision of the court, a jury having been waived.

*Albert W. Seaman* [*Delany & Niper* with him on the brief], for the appellant.

*Charles McIntyre* [*Lamar Hardy, Corporation Counsel*, and *Terence Farley* with him on the brief], for the respondent.

THOMAS, J.:

In January, 1899, there was issued to plaintiff " An assistant teacher's license (permanent) to act as a critic teacher in a training school for teachers in the borough of Brooklyn," and she was appointed by the school board a regular teacher in such school, and has since that time held such position. March 8, 1913, the plaintiff sued the board of education and established by judgment entered January 4, 1915, on defendant's offer of judgment of December 29, 1914, for $1,956.13, that defendant by a by-law of July 16, 1900, had fixed a minimum salary for a female regular teacher at the sum of $1,100, with

an annual increase of $80 to a maximum salary of $1,900, and that for the year 1907 (her ninth year) she was entitled to $1,740, and was paid $1,500; for 1908 (her tenth year) to $1,820 and was paid $1,500; for the years 1909, 1910 and 1911 (her eleventh, twelfth and thirteenth years) to $1,900, and was paid $1,500, and for the year 1912 (her fourteenth year) to $1,900 and was paid $1,850. So she fixed her status as a regular teacher at the close of the year 1912 (her fourteenth year), entitled to the maximum salary of $1,900. The judgment accorded with the Davis Act (Laws of 1900, chap. 751, § 4, amdg. Laws of 1897, chap. 378, § 1091), which declares that a female regular teacher should not receive less than $1,100 per annum, nor after ten years of service as such less than $1,900 per annum. There were conditions unnecessary to discuss. The judgment proves compliance with them. She arrived at the salary due her, and at the yearly increment, by accepting the provision for regular teachers in schedule XI adopted by defendant on July 16, 1900, in purported compliance with the Davis Act, and readopted March 26, 1902, after the revision of the charter (Laws of 1901, chap. 466), containing section 1091 of the Davis Act. The schedule had a column with the caption "Assistant (Reg.) Teacher," which showed $1,100 for the first year and $1,900 for the eleventh year, and was in full obedience to the requirement of the Davis Act as to regular teachers. But that column was not intended to refer to critic teachers, for the by-law provided: "The critic teachers shall receive the same salaries as model teachers." That direction was contrary to the Davis Act and was void. Hence, the schedule for assistants with no valid exceptions brought plaintiff into the proper classification, and the judgment was quite proper. The judgment does not in terms purport to adjudge that plaintiff was an assistant teacher, but she was one. Earlier by-laws and schedules had given the critic teacher the same salary as an assistant teacher. On June 28, 1898, the school board adopted a salary schedule whereby critic teachers and assistants to the faculty were paid the same salaries, arranged under a column headed "Assistants to Faculty," and it was provided that "no person shall be appointed critic teacher or assistant to the faculty, who does not hold a critic teacher's certificate."

But there were teachers called critic teachers, and teachers called assistants to the faculty. The schedule of salaries indicates that then the faculty was composed of head teachers with one salary, assistants with less, critics with the salary of assistants, and model teachers with less salary. The schedule adopted on July 5, 1899, and obtaining when the Davis Act was passed, provided salaries for principal, head teacher or head of department, assistant to faculty or critic teacher, and model teacher, and definitely states that " A critic teacher or assistant to the faculty shall receive " salaries of the same increasing amounts. For the purposes of salary, critic teachers and assistants to the faculty were the same. In training schools were elementary classes taught by model teachers. The students in the training schools observed the model teachers in their work and were taught by the assistant teachers, and in time such students practiced teaching in the elementary schools under the observation, criticism and rating and report of the critic teachers. In such state of affairs came the Davis Act of 1900. It empowered the board of education to fix salaries and the annual increase, if any, subject to certain limitations as to minimum salaries. Then, as already stated, the board of education, on July 16, 1900, and March 26, 1902, adopted schedule XI. The obvious illegality of the schedule is that it gave to a critic teacher no more than the salary of a model teacher, whereas the critic teacher was a regular teacher and the Davis Act provided that " no female regular teacher in said schools shall receive less than eleven hundred dollars per annum, nor after ten years of service as such, less than nineteen hundred dollars per annum," while it fixed the minimum salary of a model teacher at $1,000, and the maximum at $1,500. It was in view of that error that the plaintiff first sued, demanding that she be paid as a regular teacher, for which the Davis Act and the schedule of the years 1900 and 1902 made ample provision. It is to be noted that when plaintiff brought the suit in March, 1913, demanding increased payment as a critic teacher, there had been another statute passed (Laws of 1911, chap. 902) and other schedules adopted which, if applicable, gave her a larger salary with a larger annual increment than in her complaint in her first action she claimed.

For, on May 24, 1911, the board adopted a schedule that provides for a salary for " assistant teachers " progressing to $2,750 for the thirteenth year, which is entirely out of accord with the schedule the plaintiff claimed for herself in her first action from her ninth to fourteenth years of service. The schedule of May 24, 1911, preserved the error of the schedules of July 16, 1900, and March 26, 1902, by allotting the critic teacher the salary of the model teacher. Also, before her first suit was brought, there had been enacted chapter 902 of the Laws of 1911, become a law October 30, 1911, and thereupon, on November 29, 1911, the school board had adopted schedules to take effect January 1, 1912, under which plaintiff did not claim in her first action, begun March 8, 1913, but under which, if applicable, plaintiff could have recovered on the basis of $2,150 for her ninth year, with a yearly increment to $2,750 for her thirteenth year, provided she had fulfilled applicable conditions. In this action she does claim at the rate of $2,750 for the years 1912 to and including April, 1915. The first action covered the year 1912, and she cannot relitigate her rights for that year. The schedule of November 29, 1911, again ascribed to her the salary of a model teacher, which, as to a regular teacher, was in violation of the Davis Act and the act of 1911, and on January 1, 1914, the schedule for model and critic teachers was amended so as to provide for a salary of $2,050 for the ninth year, which exceeded the minimum salary of $1,900 after the tenth year for regular teachers. But the action of the board was too tardy, as the statute of 1911 has confirmed to critic teachers the higher salaries contained in the schedules of May 24, 1911. Since January 1, 1914, plaintiff has been receiving $2,050. For the year 1913 she received only $1,850, whereas she should have had at least $1,900, and the defendant concedes that she should have judgment for $44.70 rather than $50, upon the ground that the first action was begun March 8, 1913, and that she could have recovered on the basis of a $1,900 salary, the 1913 salary to that date. However that slight difference should be adjusted, I conclude that she should recover much more. For the important question is now whether for periods after her first action plaintiff may recover, not only as a regular teacher as she did before, but also as

an assistant teacher under the schedules adopted on May 24, 1911, and confirmed by the act of 1911 and readopted November 29, 1911. The plaintiff's argument is (1) that she is a regular teacher, which is undoubtedly correct; (2) that she is also an assistant teacher; (3) that assistant teachers for the years here involved are paid $2,750 per year, if proven of sufficient merit, which is correct. Her conclusion is that she is entitled to $2,750 per year. This brings the inquiry critically to the second term of her premises. Is plaintiff an assistant teacher, and, if so, could the board of education make one grade of salaries for assistant teachers other than critic teachers, and a less salary for the critic teacher? I consider it first in view of the Davis Act of 1900. Before entering upon it, attention is directed to the history of which partial survey has been had, and which shows that critic teachers have in all schedules been treated separately under the name of critic teachers; that plaintiff was licensed as *an assistant teacher to act as a critic teacher*, and was appointed to serve as a critic teacher; that her work was that of a critic of scholars acting as teachers, whom assistant teachers instructed; that since 1902 licenses to critic teachers have run to them as such; that at the time of plaintiff's appointment the by-laws of the board of education of the city of New York provided for licenses (and such other as the school board of a borough should designate) graded in training schools to assistant teacher, first assistant teacher or member of faculty, principal; that the general rules provided that " No one shall be appointed or promoted to teach principles of education or methods of teaching or as critic teacher in a training school for teachers who does not hold an assistant teacher's license to teach in a training school, or a license of higher grade; " that the school board of the borough of Brooklyn, empowered as above shown, adopted a by-law that licenses for training schools for teachers should include certificates for model teachers, critic teachers, head teachers and principals; that the requirements for critic teacher were at least equal to those of assistant teacher; that an assistant teacher must hold a critic teacher's certificate; that by the schedules of June 28, 1898, and again by those of July 5, 1899, the salary of a critic

teacher was declared to be the same as that of assistants to the faculty; that it was not until the schedule of July 16, 1900, that the school board in matter of salary attempted to differentiate a critic teacher and assistant teacher, and that since that date they have continued so to do, not only in matter of salaries, but since June 25, 1902, in kinds and grades of licenses, with eligibility for the license for a critic teacher stated, and for an assistant teacher differently stated, with what equality or superiority of qualification to the one or the other I do not attempt to decide. It is apparent that during the earlier period critic teachers were in the schedules designated in a class by themselves, with duties unlike other teachers, with qualifications similar to assistant teachers and with a like value ascribed to their services. But after the passage of the Davis Act, they were still kept distinct in name, salary, and maybe in qualifications, from assistant teachers. Did the Davis Act permit that? That act did not name critic teachers. It did provide in training schools for model teachers, regular teachers, head teacher, assistant to the principal, first assistant and vice-principal, and minimum salaries in different amounts are provided (1) for model teacher; (2) for regular teacher; (3) head teacher, assistant to principal, first assistant and vice-principal, in one group. The schedules of 1900 keeping model teachers separate, as it should do, provided for " Assistant (Reg.) Teacher " at one rate, and " First Assistant " at another. That the Davis Act permits, because it refers to regular teachers, and also to first assistants. But must the schedules include critic teachers in the same salary class as assistants? The Davis Act contemplates that there may be regular teachers, who are not to be paid either as female assistants to the principal or as first assitant, for its so provides. All are regular teachers, and all regular teachers are assistant teachers. Of what avail to prescribe minimum and advancing salaries for regular teachers, and another scale of salaries for assistant to principal, and first assistant, if it was intended that all regular assistants should be paid according to a common scale? The Davis Act (§ 4) provides: " The board of education shall have power to adopt by-laws fixing the salaries of the borough and associate superintendents, and all members of the supervising and the teaching

staff, and the salaries of all principals and teachers shall be
regulated by merit, grade of class taught, length of service,
experience in teaching, or by such a combination of these
considerations as said board may deem proper.  Such by-laws
shall establish a uniform schedule of salaries for ,the super-
vising and the teaching staff throughout all boroughs which
schedule shall provide for an equal annual increment of
salary of such an amount, * * * that in high schools
and training schools for teachers " model teachers, regular
teachers and head teachers, assistant to the principal, first
assistant and vice-principal, shall receive not less than the
minimum salaries stated in the act.  The board of education
in fixing salaries must consider " merit, grade of class taught,
length of service, experience in teaching," and by such things,
" or by such a combination of these considerations as said
board may deem proper," fix the salaries.  But how can it
weigh the merits of assistant teacher, and of what avail to do
so, if it must advance alike all of them?  There must be a
" uniform schedule of salaries for the supervising and the
teaching staff," and the " equal annual increment for each
class or grade * * * shall be uniform throughout each
class or grade, and each of said persons shall at once receive
all the emolument in accordance with the above schedule of
minimum salaries to which said person is entitled by reason of
merit, of experience and of grade of class taught."  But
what is " each class or grade " as to which uniformity must
prevail?  The board fixes grades by measuring the capacity
and merit and service.  If assistant teachers are exempt
from grading, save in one group, grading ceases from impos-
sibility of finding material to grade.  Hence, I think that the
statute did not constrain the board to group all regular teachers
under one head with one uniform salary and increases.  But
the minimum must always be observed, and there the board
failed.  The board, at least from January 1, 1914, has rated
critic teachers upon a salary of $2,050.  That more than meets
the demand of the Davis Act.  But the difficulty is that
before it did that the act of 1911 vested rights in the plaintiff
that gave and continues to her a higher salary.  On October
30, 1911, when the act of 1911 took effect, the schedule of
May 24, 1911, was in force, except the part that gave the

critic teachers only the salaries of model teachers, which was void, as a violation of the Davis Act. What was the result? The critic teacher not being legally excepted, fell into the regular class of assistant teachers. For I cannot conceive that a critic teacher is not an assistant teacher. Section 1091 of the Greater New York charter (Laws of 1911, chap. 902) gives the board of education power to fix salaries. But there is provision that " The salary, including the annual increment, to which a present member is entitled under a specific salary schedule now existing shall not be reduced. Beginning with the first day of January, nineteen hundred and twelve, third month following the taking effect of this act the salaries, including the annual increments, of all members shall be not less than those fixed in the schedules and schedule conditions' approved by the board of education on the seventeenth and twenty-fourth days of May, nineteen hundred and eleven." Above I have concluded that plaintiff was at the passage of the act entitled to a salary according to the general schedule of May 24, 1911, for assistant teachers. The act of 1911 confirms it to her. On November 29, 1911, the board tried again to put her in the model teacher's class. The schedule was void under both the Davis Act of 1900 and the act of 1911. Again, in 1913, the board placed critic and model teachers in the same schedule with a maximum of $2,050. That is less than plaintiff was entitled to when the act of 1911 confirmed to her a salary under the schedule of May 24, 1911, for assistant teachers with right to advance, which includes increments, if she acquired superior merit, to $2,750. Hence, she should be paid for the years 1913 and thereafter according to that schedule, but it would seem that she cannot advance beyond the salary of $2,150, the salary for the ninth year, because she has not qualified as a teacher of superior merit. It is true that her judgment shows that she was entitled to an assistant's salary for the fourteenth year, but, as I understand, the conditions precedent were different. In any case, she is entitled to $2,150 for the year 1913 and thereafter. That the defendant concedes to her if she is entitled under the existing assistant's schedule. The effect of this discussion is that the board of education under the Davis Act could, for the purposes of salary, have distinguished

critic teachers from other assistant teachers, but that its provision in that direction was illegal and void, so that when the act of 1911 took effect critic teachers fell under the salary schedules of assistant teachers, and by the act of 1911 such salaries were confirmed to them.

The judgment should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., MILLS, RICH and PUTNAM, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.